**Affirmed and Memorandum Opinion filed December 4, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00526-CV

## IN THE INTEREST OF D.I.L.-M. AKA D.M., S.K.D.-M., A.M.Q.-M. AKA A.M.B. AND A.J.B.-M., CHILDREN

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2017-03375J**

## M E M O R A N D U M    O P I N I O N

Appellant, E.M. (Mother), appeals the trial court's final decree terminating her parental rights as to S.M. (Samantha), A.M. (Avery), and A.B.M. (Andrew).[1] Mother contends the evidence is legally and factually insufficient to support the trial court's findings as to the predicate grounds on which her parental rights were terminated and that termination is in the children's best interest. We affirm.

---

[1] We use pseudonyms to refer to appellant, the children, and other family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

BACKGROUND

**A. The Department's Investigation**

In April 2016, the Department of Family and Protective Services (the Department) received a referral alleging sexual abuse of D.M. (Danielle),[2] a fourteen-year old girl, by her step-father (Father). Father is the natural parent of Danielle's younger half-siblings Avery and Andrew.[3] Samantha and Danielle each have a different father from their siblings.[4] The Department initiated an investigation, which resulted in Father moving out of the home. During the investigation, Danielle recanted the allegations of sexual abuse, but informed the Department that Mother struck Danielle with a cord. The Department's investigator observed marks on Danielle's body from the incident. Mother admitted to the Department investigator that she struck Danielle with the cord. The Department assigned Mother's case to Family Based Safety Services wherein Danielle and Mother received therapy. The Department also became aware that Andrew, who was five months old at the time, was born with congenital mitral heart atresia and that Mother had missed important doctor's appointments. Family Based Safety Services assisted Mother in establishing medical care for Andrew's heart condition. Mother also began engaging in family services but was delinquent and inconsistent in completing and attending the required programs.

Prior to the 2016 referral, the Department received two referrals in 2014 for neglectful supervision alleging that Mother left the children home alone, hit one child in the face, was in possession of cocaine, and that she would get "high" on marijuana

---

[2] Danielle has been missing since October 31, 2017. The trial court granted a partial non-suit with regard to Danielle, excluding her from the trial court's final decree and this appeal.

[3] Father's parental rights were terminated pursuant to an irrevocable affidavit of voluntary relinquishment of parental rights, which he signed prior to trial. Father has not appealed.

[4] Mother stated that both Samantha's and Danielle's fathers were living in Honduras. The Department was unable to locate either one.

and physically abuse the children. After investigating, the Department determined there was not enough evidence to support these referrals. There was also a referral alleging sexual abuse of Danielle in 2015, which the Department found to be unsubstantiated.

In May 2017, the Department received a referral alleging Mother was using crystal meth, cocaine, and marijuana while caring for her children. The referral further alleged that Mother did not use proper child safety seats while driving the children in her vehicle. Mother took a drug test as a result of this allegation and tested positive for cocaine in both a urine and a hair follicle test. Mother admitted to the Department's investigator that she had used cocaine. The Department referred Mother to a substance abuse program and determined the children needed to be removed from her care. The Department placed Avery and Andrew with their paternal aunt (Aunt). The Department was unable to find familial custody for Samantha and Danielle and placed the girls in an emergency shelter.

## B. Trial Proceedings

On June 16, 2017, the Department filed a petition for conservatorship and termination in a suit affecting the parent-child relationship. The Department sought to be appointed temporary sole managing conservator and termination of Mother's parental rights if reunification could not be achieved.

During the pendency of the trial court proceedings, the Department was appointed temporary managing conservator of the children. Avery and Andrew remained in the care of Aunt, while Danielle and Samantha were eventually moved from the emergency shelter to a non-adoptive foster home.

The Department prepared a family service plan for Mother. Mother's service plan required that she: complete a substance abuse assessment, complete a psychosocial assessment, begin and regularly attend a therapy program, and participate in an inpatient substance abuse treatment program.

3

At trial, before any witness testimony, the trial court admitted the following into evidence: Mother's Family Service Plan; Mother's drug test results; Father's July 28, 2017 charge of assault against Mother; Father's July 28, 2017 possession of cocaine charge; a certificate of completion of Mother's individual counseling program; Mother's lease agreement; and Mother's counseling treatment plan.

*Evidence about Mother*

The Department caseworker testified about Mother's drug tests results. Mother's hair follicle and urinalysis tests both came back positive for cocaine in May 2017, June 2017, and August 2017. After the first permanency hearing in November 2017, and in subsequent tests up to the date of trial, Mother's urinalysis tests came back negative for illegal substances while her hair follicle tests came back positive for cocaine, but in decreasing amounts on each test. Mother's last drug test, in May of 2018, came back negative for illegal substances in both her hair follicle test and her urinalysis test.

The Department caseworker further testified that Mother's substance abuse assessment recommended an inpatient substance abuse program, but Mother did not comply. Mother has not received substance abuse treatment of any kind, despite admitting to having used cocaine around her children. At the time of trial, Mother was leasing a bedroom from a friend of a friend. The caseworker visited Mother's residence and explained to the court that the room consisted of a mattress on the floor where Mother slept. Mother informed the caseworker that she is employed providing cleaning services, but Mother has been unable to provide evidence of this employment.

The Department caseworker testified that visits between Mother and the children went well and that Mother attended all her visits. The caseworker further testified that the children love Mother. Nevertheless, the caseworker believed it would be in the children's best interest to have Mother's parental rights terminated. The witness for Child Advocates also testified that it would be in the children's best interest to have

4

Mother's parental rights terminated.

Mother testified that she wants to fight for her children and explained that she is now "clean" from drugs and healthy enough to take care of her children. According to Mother, she would rent an apartment if she is able to get her children back. Mother testified that the referrals of neglectful supervision and sexual abuse were all from a neighbor who had a problem with the children. Mother admitted to having made mistakes by using drugs but pleaded for another chance.

*Evidence about the Children*

Danielle ran away from her foster care placement eight months prior to trial and was still missing at the time of trial. The Department filed a police report and opened an investigation with the National Center for Missing and Exploited Children to locate Danielle.

Samantha, who was thirteen years old at the time of trial, was present at trial. Samantha was staying at a non-adoptive foster home at the time of trial. The Department caseworker testified that the Department was investigating two potential out-of-state familial placements for Samantha. The Department conceded, however, that Samantha indicated she would like to stay with Mother. According to the witness for Child Advocates, Samantha asked to be present at trial in order to hear for herself the case against Mother.

Avery and Andrew were living with their paternal aunt whom they loved and had been living with since June 2017. The Department caseworker testified that their aunt takes very good care of the children and loves them.

After arguments by counsel and the guardian ad litem's recommendation that Mother's parental rights be terminated, the trial court signed a final decree terminating Mother's parental rights under section 161.001(b)(1)(D), (E), and (O). The trial court also found that termination of Mother's parental rights was in the best interest of the

5

children. This appeal followed.

## ANALYSIS

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

### A.    Standard of Review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its

6

finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

## B.     Predicate Termination Grounds

Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's judgment terminating her parental rights under sections 161.001(b)(1)(D), (E), and (O) of the Texas Family Code. Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We first evaluate whether termination was proper under section 161.001(b)(1)(E).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In this context,

7

endanger means "to expose to loss or injury; to jeopardize." *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d at 477.

Termination under subsection 161.001(b)(1)(E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re T.N.*, 180 S.W.3d at 383; *see also In re J.O.A.*, 283 S.W.3d at 336 (holding that endangering conduct is not limited to actions directed toward the child). Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth. *Id.* ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Mother contends the Department failed to prove termination was permissible under subsection (E) because she has tested negative for illegal substances in her urinalysis tests since the first permanency hearing. The Department argues the evidence supports the trial court's finding because it shows Mother had an on-going drug problem.

As a general rule, subjecting a child to a life of uncertainty and instability

endangers the child's physical and emotional well-being. *See In re J.O.A.*, 283 S.W.3d at 345. Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment under subsection (E). *See In re A.R.M.*, No. 14-13-01039-CV, 2014 WL 1390285, at *8 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.); *In re C.A.B.*, 289 S.W.3d at 886. Likewise, illegal drug use may support termination under subsection (E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. This court has also held that a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *In re A.H.A.*, No. 14-12-00022-CV, 2012 WL 1474414 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.).

The children were removed from Mother's care in June 2017, after Mother's urinalysis test came back positive for cocaine and Mother admitted to using cocaine. Mother's urinalysis test came back positive again for cocaine in August 2017, after the children had been removed and Mother was aware her continued use of cocaine could result in the termination of her parental rights. Mother's November 2017 psychosocial evaluation indicated that Mother had been diagnosed with cocaine use disorder. There is also evidence that Mother was using cocaine as far back as 2014 while caring for the children. A parent's drug use may qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being. *In re S.R.*, 425 S.W.3d 351, 361–62 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also In re C.A.B.*, 289 S.W.3d at 885. In addition, Mother admitted to physically abusing Danielle and referrals to the Department allege physical abuse as well. There is also evidence Mother missed doctor's appointments for Andrew's heart condition.

9

Based on the record before us, we conclude a reasonable fact finder could have formed a firm belief or conviction that Mother engaged in conduct that endangered the physical or emotional well-being of the children through her acts or omissions. *See, e.g.*, *In re A.R.M*, 2014 WL 1390285, at *7–9; *In re C.A.B.*, 289 S.W.3d at 886–87. Considered in the light most favorable to the trial court's finding, the evidence is sufficient to support the trial court's determination that termination of Mother's parental rights was justified under section 161.001(b)(1)(E) of the Family Code. Accordingly, we conclude the evidence is legally and factually sufficient to support the section 161.001(b)(1)(E) finding. We overrule Mother's first issue.

Having concluded that the evidence is legally and factually sufficient to support the trial court's finding of endangerment under section 161.001(b)(1)(E) of the Texas Family Code, we need not address Mother's contentions challenging the court's findings under section 161.001(b)(1)(D) and (O). *See In re A.V.*, 113 S.W.3d at 362. Mother's first and second issues are overruled.

## C. Best Interest of the Children

In her third issue, the Mother asserts that the evidence is legally and factually insufficient to support the trial court's best-interest finding. We review the entire record in deciding a challenge to the court's best-interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). We apply a strong presumption that the best interest of a child is served by keeping the child with the natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

Courts may consider the following non-exclusive factors in reviewing the sufficiency of the evidence to support the best-interest finding: the desires of the child; the present and future physical and emotional needs of the child; the present and future

10

emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (West Supp. 2016) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating parental rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533.

## 1. Present and future physical and emotional danger to the children

The Texas Supreme Court has recognized that a parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d at 345; *see also Edwards v. Tex. Dep't of Protective Servs.*, 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ) (stating a parent's drug use is a condition that can endanger a child's physical or emotional well-being and indicate instability in home environment). A parent's drug use also supports a finding that termination of parental rights is in the best interest of the children. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.); *see also In re M.S.L.*, No. 14–14–00382–CV, 2014 WL 5148157, at *6 (Tex. App.—Houston [14th Dist.] Oct. 14, 2014, no. pet.) (mem. op.). The factfinder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *see also In re J.N.H.*, No. 02–11–00075–CV, 2011 WL 5607614, at *8 (Tex. App.—Fort Worth Nov. 17, 2011, no pet.) (mem. op.) (considering a parent's criminal and drug histories in affirming a trial court's decision that termination was in

the best interest of the child).

The record reflects Mother continued to use cocaine after the children were removed from her care, despite knowing this continued behavior could result in the termination of her parental rights. Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct and that termination is in the best interest of the children. *Cervantes–Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc).

## 2. Children's desires

When a child is too young to express the child's desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d at 118. Although a child's love of a parent is a very important consideration in determining the child's best interest, it can neither override or outweigh evidence of danger to the child nor compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life. *In re D.S.*, No. 02-15-00350-CV, 2016 WL 1267808, at *8 (Tex. App.—Fort Worth Mar. 31, 2016, no pet.) (mem. op.).

At the time of trial, Avery was three and half years old and Andrew was two and half years old. Both children had been in Aunt's care for almost a year. The witness for Child Advocates testified that Avery and Andrew were well-bonded with Aunt and that they loved her very much and she loved them very much. Further, while Mother proved to have difficulties in ensuring Andrew's proper medical care, Aunt has had no problems.

Samantha, who was thirteen years old at the time of trial, informed the witness

for Child Advocates that she would like to stay with Mother. Despite Samantha's statement that she desired to be returned to Mother, the Department was conducting home studies on familial placements in California and Kansas. A relative who was one of the potential kinship placements was in attendance and recognized at trial. Samantha's desire to stay with Mother weighs in Mother's favor with regard to Samantha but may not outweigh the other factors. *See, e.g. In re J.N.S.*, 13-17-00356-CV, 2018 WL 286090, at *7 (Tex. App.—Corpus Christi Jan. 4, no pet.) (mem. op.) (holding that a mother's continued instability and use of illegal drugs presented a risk to the children's welfare which outweighed their desire to remain with her).

### 3. Stability of the home or proposed placement

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.–San Antonio 2014, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in the best-interest determination. *See K.C.*, 219 S.W.3d at 931. Therefore, evidence about the present and future placement of the child is relevant to the best-interest determination. *See C.H.*, 89 S.W.3d at 28.

Mother provided a copy of her lease of a bedroom and states that she will rent an apartment if her children are returned. The caseworker testified the rented space was a room with a mattress on the floor. Further, Mother testified that she provides cleaning services, but has not demonstrated any evidence of stable income to support the three children. Moreover, Mother was inconsistent in ensuring Andrew received his necessary medical care. The trial court reasonably could have concluded that Mother's proposed home environment was not stable or reliable enough for this factor to weigh in her favor.

13

### 4. Summary

In sum, the record contains sufficient evidence to support the best-interest finding based on Mother's drug use in addition to the physical abuse within the household. It was within the trial court's discretion to determine the weight and credibility of the Mother's testimony. *In re K.A.S.*, 131 S.W.3d 215, 229–30 (Tex. App.—Fort Worth 2004, pet. denied). The factfinder resolved all credibility issues and we may not disturb that determination. *See In re H.R.M.*, 209 S.W.3d at 108; *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder reasonably could have formed a firm belief or conviction that termination of Mother's parental rights is in each of the children's best interest. *See J.F.C.*, 96 S.W.3d at 265–66. After considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in the children's best interest. We therefore overrule Mother's third issue.

## CONCLUSION

The trial court's judgment is affirmed.

/s/    John Donovan
Justice

Panel consists of Chief Justice Frost, and Justices Jamison and Donovan.

14